SAMUEL ALDERSON

*v.*

WILLIAM ENNOR.

1. CAUSE OF ACTION — *contract and tort* — *money had and received.* When mineral has been obtained by a trespass upon the lands of another, and converted into money, the trespass may be waived, and an action of assumpsit brought for the proceeds.

2. SAME — *for money had and received* — *when may be brought.* An action for money had and received may be maintained, whenever a party has obtained money from another, which in equity and good conscience he ought not to retain, or has sold the property of another and converted it into money.

3. INSTRUCTIONS — *not based upon evidence, may be refused.* It is proper for the court to refuse an instruction which is not based upon any evidence introduced.

4. ASSUMPSIT — *action of* — *when privity between parties.* A and B were owners of adjoining mineral lands. C went upon the land of B, sunk a shaft, and drifted upon the land of A, and sold the mineral raised from A's land to B without retaining the royalty due to A. *Held,* that there was such privity between the parties as would create a liability, it being a custom among miners to sell the mineral raised by them, the buyer, if a smelter, retaining the royalty due to the owner of the land. C must, therefore, be considered the agent of A in the sale of the mineral to B.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. D. W. JACKSON, for the appellant.

Mr. A. L. CUMINGS, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit on the common counts, brought to the Jo Daviess Circuit Court, by William Ennor against Samuel Alderson, and a verdict and judgment for the plaintiff.

To reverse this judgment the record is brought here by appeal.

The only point made here is upon the instructions given to the jury.

The case was briefly this: Plaintiff and defendant were owners of adjoining tracts of land in the lead mine region not separated by any visible line. The defendant was also a joint owner, with one Williams, of land adjoining his land on the east.

It is the custom prevailing in that locality, that miners, mining on land without making any agreement, will pay a royalty or rent of one-sixth of the mineral raised, to the owner of the fee. Under this custom, Dougherty and Beggins went upon defendant's land and sunk a shaft sixty feet deep, and drifted west toward the land of the plaintiff. The plaintiff staked out what he supposed to be the dividing line between his land and the defendant's, and told the miners to pay the royalty according to that line.

After the miners had drifted west to that line, they went over on to the land of plaintiff by his permission, and sunk a shaft about ten feet west of the line so staked out, and then drifted east to intercept the drift extending west on the land of the defendant.

The defendant, being dissatisfied with the line so staked by the plaintiff, in July, 1865, employed a surveyor to run the line, and he found what he considered the true line to be thirty-

seven $\frac{62}{100}$ feet west from the plaintiff's shaft, and that the plaintiff, in staking the line, had made a mistake against him-self of more than twenty-seven feet. In the fall before this line was run, the miners sold to defendant 5,220 pounds of mineral, at $100 per thousand pounds, which came from the land between the line run by the surveyor and the line staked by the plaintiff. The teams of one Combellick came with an order from defendant and took the mineral away, and Combellick afterward paid the miners the amount coming to them.

The value of this mineral, in cash, was $522, one-sixth of which, eighty-seven dollars, was the claim of the plaintiff as rent, and which the defendant received and refused to pay over to the plaintiff. For this the action was brought, and a recovery had of eighty-seven dollars.

The instruction given for the plaintiff, to which the defendant excepted, was as follows: "If the jury believe, from the evidence, that the witnesses Dougherty and Beggins raised 5,200 pounds of mineral from the land of the plaintiff, and sold and delivered the same to the defendant, as a smelter, at $100 per thousand, and that he retained in his hands the one-sixth of said mineral as rent, and has converted the same into money, then, in that case, unless he has shown that he has paid the same out in good faith to some other party claiming the same, the jury are authorized to find for the plaintiff the amount of money so received by the defendant for such mineral."

Appellant, in his objections to this instruction, gives us interesting information in regard to the manner in which this sort of mining is conducted in the mineral region of our State. He says the greater portion of the mineral there raised is raised by individuals or associations on the lands of others; that parties desiring to mine usually make an arrangement with the owner of the land to go upon it and dig for mineral, paying a portion, varying from one-fourth to one-tenth, of the amount raised, to the owner, for the privilege. The mineral is usually sold by the miner to the smelters, though not always, and, by the act of 1861, of the general assembly, the miner in

selling is obliged to disclose to the purchaser where the mineral was obtained. At the time of the sale, the miner usually discloses what portion of the mineral he has agreed to pay as royalty, or rent, for the privilege of mining, and this royalty is deducted from the amount coming to the miner for the mineral, and is retained by the smelter for the owner of the fee. To do this, there is no legal obligation, but it is customary. He says there are many exceptions to this rule.

He then insists, that this instruction submits it as a question of fact in issue whether the defendant purchased these 5,220 pounds of mineral " as a smelter," and, in accordance with the custom of doing business in the lead mine region, retained the royalty of the land owner and refused to pay it over to him on demand ; and, as there was no evidence the defendant purchased the mineral as a smelter, the instruction submitting that question to them was improper. Whatever may be the import of the words, and, with the explanation given, the instruction itself establishes the fact, that the question submitted to the jury was, whether the purchase was made in the manner in which purchases are usually made by smelters, and he insists that the instruction, so worded, actually misled the jury as to the issue.

By the appellant's own showing, purchases of mineral are not always made by smelters, for he says " not unfrequently," which means " very often," parties other than smelters purchase mineral, in which case they do not assume to retain the royalty. We conceive it makes but slight, if any, difference, whether the party buying the mineral assumes to retain the royalty or not, if he does in fact retain it, and that is the gravamen of this action, that the defendant, in fact, retained the royalty and converted it into money, which he refuses to pay over to the person entitled. If the defendant received the property of plaintiff and converted it into money, he ought to be liable to the plaintiff for the proceeds, in whatever character he received it. It is, therefore, wholly immaterial whether he received it as a smelter, or in some other character; the obligation rests upon him to pay over the proceeds to whomsoever

they may belong. Rejecting the words "as a smelter" as surplusage, the instruction is sensible and announces the correct rule of law applicable to the case; for, if the mineral was obtained by a trespass, and has been converted into money, the trespass may be waived and assumpsit brought for the proceeds. The action is for money had and received, in which action, if the plaintiff shows the defendant has received money belonging to the plaintiff which, *ex equo et bono*, he ought not to retain, the plaintiff must recover. *Taylor* v. *Taylor*, 20 Ill. 650. There is a clear obligation resting upon the defendant to pay this rent over to the plaintiff, as the mineral he bought of Dougherty and Beggins was taken from the land of the plaintiff.

That the rent of one-sixth was paid to the defendant seems quite probable from the testimony, for defendant claimed it, and Combellick, when he hauled away the mineral, paid only the miners their share. From the fact that Combellick hauled away the mineral on an order from defendant, paying the miners their share only, the jury had the right to infer that defendant had sold the mineral to Combellick, and thereby converted it into money, and for this the action lies. *Dickenson* v. *Whitney*, 4 Gilm. 406.

The defendant's first instruction was properly refused, for the reason that it was wholly immaterial to the plaintiff how or for what the defendant and Childs accounted, or how they arranged their respective claims; the question for the jury was, had defendant money of the plaintiff which he ought not to retain?

The second instruction of defendant refused was not based upon any evidence in the cause, for there was no dispute about the ownership of these lands at any time.

Nor is there any evidence to support the third instruction refused. There was no claim of ownership litigated or in evidence before the jury. The simple question was, did defendant receive and retain rent belonging to plaintiff for the use of his land for mining purposes?

The fourth instruction presents a different view of the case. It is this: "The jury are instructed, as the law of this case,

that, if they believe, from the evidence, that the defendant received rent of the plaintiff's mineral land, the defendant is not liable in this action, unless they also find that the defendant received those rents as the agent of the plaintiff."

We do not perceive the force of this instruction. Is it intended to lay down the law, that in no case will this action lie unless the plaintiff shall prove the defendant, in receiving rent or money, acted as the plaintiff's agent? If the law is so in this case, it must be so in every case, which, it is well understood, it is not. If the instruction was designed to raise the question of privity, in order to bring the case within the authority of the cases of *Trumbull* v. *Campbell*, 3 Gilm. 502, and *Hall* v. *Carpen*, 27 Ill. 386, and *Carpen* v. *Hall*, 29 id. 512, it was proper so to raise it.

But was there not privity between these parties? By the admissions of appellant's counsel, the miners are accustomed to sell the mineral raised, the buyer, if a smelter, retaining the rent to be paid over to the owner of the land. The miners, therefore, may be considered the agents of the land owners in the sale of this mineral to the defendant, hence privity; and as it is clearly proved the defendant has not paid it over to the plaintiff, this action is well brought, and the plaintiff ought to recover. As to the fifth instruction, it was properly refused, for Alderson and Child had no right to receive and appropriate to their use, the money or property of the plaintiff.

There being no error in the record, the judgment is affirmed.

*Judgment affirmed.*